PAYNE, J.,
for the Court:
PROCEDURAL HISTORY
11. Larry Johnson was indicted in the Circuit Court of Washington County, Mississippi on April 22, 1996, on one count of aggravated assault, pursuant to Miss.Code Ann. § 97-3-7 (Rev.1994). On May 31,1996, he was arraigned and entered a plea of not guilty. On the motion of the State, Johnson’s trial was continued by the court on October 10, 1996, and was reset to be tried on December 4, 1996. Johnson signed a petition to enter a plea of guilty on October 14, 1996, and the same was entered on December 5, 1996. Thereafter, Johnson failed to appear for the plea hearing on December 6,1996. A bench warrant was issued.
¶ 2. Forfeiture was taken on Johnson’s bond and a scire facias was issued on the bonding company by the circuit court. The bench warrant and scire facias was withdrawn on December 9,1996. On January 17, 1997, Johnson withdrew his petition to enter a plea of guilty. On January 30, 1997, Johnson was tried and the jury returned a verdict of guilty. On February 27, 1997, Johnson was sentenced to serve a term of fifteen years.
¶ 3. Feeling aggrieved by the jury’s verdict, Johnson filed a motion for a new trial or, in the alternative, for a JNOV on February 28, 1997. These motions were denied. Feeling aggrieved, Johnson filed his notice of appeal on February 28,1997.
FACTS
¶ 4. On January 15, 1996, Donshekie Bar-ret walked down Delesseps Street in Green-ville, Mississippi. Barret approached Johnson’s house en route to mailing a letter to his fiance. Thereafter, Johnson shot Barret in the foot.
¶ 5. After the incident, Barret, unaware at that time he had been shot, walked to the mailbox. He then noticed he had been shot. He went to the hospital, was treated, and was then released. A bullet was recovered from his sock.
¶ 6. Johnson testified that he did shoot Barret, but did so only in self defense. He *1207 further testified that Barret called him from his house and threatened to shoot him in the head. Clyde Spivey, Johnson’s cousin, corroborated Johnson’s testimony. He stated that Barret waved a gun in Johnson’s face.
ISSUES PRESENTED
I. WHETHER THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE AND THE STATE FAILED TO PROVE APPELLANT GUILTY BEYOND A REASONABLE DOUBT.
¶ 7. According to Johnson, allowing this verdict to stand would be to sanction an unconscionable injustice. Specifically, Johnson argues that he should have received a directed verdict and he also insists that the verdict of the jury was against the overwhelming weight of the evidence, and as a result he claims a reversal of his conviction is warranted.
¶ 8. Johnson first asserts that the trial court erred in not granting him a motion for a directed verdict. The supreme court has stated:
In considering a motion for a directed verdict, this Court on review must consider the evidence introduced in the light most favorable to the State, accepting all evidence introduced by the State as true, together with all reasonable inferences therefrom. If there is sufficient evidence to support a guilty verdict, the motion for a directed verdict must be overruled. Barnwell v. State, 567 So.2d 215, 217 (Miss.1990); Davis v. State, 530 So.2d 694, 703 (Miss.1988); Thompson v. State, 457 So.2d 953, 955 (Miss.1984). Conversely, if there is insufficient evidence to support a guilty verdict, the motion for directed verdict must be sustained.
Smith v. State, 646 So.2d 538, 542 (Miss.1994). The Mississippi Supreme Court has held that “[t]he jury is charged with the responsibility of weighing and considering the conflicting evidence and credibility of the witnesses and determining whose testimony should be believed.” McClain v. State, 625 So.2d 774, 781 (Miss.1993).
¶ 9. In the present case, the jury heard the witnesses and the evidence as presented by both the State and the defense. The jury listened to the testimony of the victim, Don-shekie Barret. Barret testified that he was not armed when he was shot. He stated that he was shot in the back of his foot. He showed the wound in his heel to the jury— physical evidence consistent with his testimony of running away from Johnson. Barret also identified Johnson as the person who shot him on January 15,1996.
¶ 10. Barret testified:
Q. Tell us what happened next?
A. Well, as I was coming up by the P.K. Store, him and his cousin, his cousin looked out the door, he said-, “shoot him, shoot that nigga,” just like that there. “Shoot him.”
Q. Let me ask you this, who said shoot him?
A His cousin Clyde.
‡ % s}; sfc sfc sfc
A All right, I get about right in front of the house fixing to get ready to run, he took the pistol from Clyde and went to shooting. Then I ducked down behind this car and got to running. When I ducked down, I peeped up, I seen them had disappeared from the door. I ran on down, stopped running and started laughing. When I got on down to the mailbox, dropped my mail in there, that’s when I noticed I was shot in the foot.
Q. Let me ask you this, why were you laughing?
A. I though [sic] he has missed me, and I got away from him.
* * * * * *
A, Yes, until I got to the mailbox. When I was putting my mail in there, I noticed I felt a throbbing pain in my foot, and I seen the blood on the side of my shoe coming out. That’s when I kicked my shoe off and noticed that I had been shot.
¶ 11. Officer Joseph Chillis testified that he went to 831 Delesseps — this after being informed of Barret’s injury. He recovered a bullet from Barret’s sock.
*1208 ¶ 12. The jury also heard the testimony of Johnson, who insists that his activities were consistent with his right to use self defense. His evidence incorporates testimony relating to events which preceded his shooting Bar-ret. This earlier incident placed Johnson in a state of apprehension about confronting Barret. He testified that Barret and his “home boys” did not like the fact that he (Johnson) had decided not to associate with them. Johnson stated that one of Barret’s friends punched him in the face. He further states that Barret assaulted him.
¶ 13. Evidence was also proffered by Terry Johnson, the defendant’s brother. Terry Johnson testified that he saw Barret running from the house after shots were fired. He further stated that he did not see who fired the shots.
¶ 14. This evidence mounted by Johnson also included testimony of Johnson’s cousin, Clyde Spivey. Spivey stated that he witnessed Barret hold a gun toward Johnson’s head. However, Spivey stated that he ran when shots were fired and did not see who fired the gun.
¶ 15. The jury viewed and analyzed the evidence presented to them and decided that Johnson was guilty. Johnson admitted to shooting Barret. Barret denied having a gun or ever pointing a gun at Johnson. No handgun was recovered from Barret. Terry Johnson, Johnson’s own brother, testified that he saw Barret running from Johnson’s house with nothing in his hand.
¶ 16. After reviewing the record, we find evidence which is sufficient to allow the jury to deliberate on the issue of whether Johnson did in fact commit these acts, and we find the weight of the evidence sufficient to warrant affirming the decision that the jury made. As stated by the Mississippi Supreme Court, matters regarding the weight and credibility of the evidence are to be resolved by the jury. Neal v. State, 451 So.2d 743, 758 (Miss.1984).
II. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT SUBMITTED TO THE JURY THE STATE’S JURY INSTRUCTION NUMBERS ONE, THREE, AND SIX, THEREBY CAUSING UNDUE PREJUDICE TO APPELLANT.
¶ 17. Johnson’s next objection concerns the entry of Jury Instruction 1, 3, and 6 into the listed jury instructions. He states that these instructions prejudiced him. According to Johnson, this combination of instructions is misleading, self contradictory, incorrect, and confusing.
¶ 18. Johnson begins his argument by stating that Instruction S-l is incorrect in that it states that if he shot Barret then the jury must find him guilty of aggravated assault. He states that this is an incorrect statement of the law because it failed to include the language that the jury must find the shooting was not necessarily in self defense. Instruction S-l states:
If you believe from the evidence in this case beyond a reasonable doubt that the defendant, Larry Johnson, on the date testified about, did wilfully, unlawfully, and purposely cause serious bodily injury to Donshekie Barrett ] with a deadly weapon to wit: a pistol, by shooting the said Don-shekie Barrett ], then it is your sworn duty to find the defendant, Larry Johnson, guilty of aggravated assault as charged in the indictment.
f 19. Johnson also insists that Instruction S-3 was incorrect because it states that if he used more force than was reasonably necessary under the circumstances, then he may not use self defense as a defense. He states that this is confusing and misleading because it fails to state what the specific circumstances were and what specific excessive force was used. Jury instruction S-3 states:
The Court instructs the jury that one who claims self-defense as a defense to his actions may not use excessive force to repel the attack, but may use only such force as is reasonably necessary under the circumstances. If you find from the evidence, beyond a reasonable doubt, that the defendant, Larry Johnson, used more force than was reasonably necessary under the circumstances, then the defendant may not use self defense as a defense to his action.
*1209 ¶ 20. Instruction S-6, Johnson concedes, states that his right to act in self defense is viable, if he has good reason to believe that he was then and there in danger. However, this instruction includes language that mere fear, apprehension, or belief alone does not justify a plea of self defense. This, Johnson states, is confusing. Jury instruction S-6 states:
The Court instructs the jury that while it is true that under the law a person has the right to repel force with force, even to the extent of shooting an assailant in self defense, a person may only justify such an act as self-defense if he has good reason to believe that he was then and there in danger, real or apparent, of being done great bodily harm or losing his life at the hands of the assailant. Such danger must reasonably appear to be imminent and impending; mere fear, apprehension or belief alone does not justify a plea of self defense.
¶ 21. Johnson was allowed to give an instruction on self defense, listed as D-6. That instruction says:
The court instructs the jury that the shooting of a person is justifiable or excusable on the grounds of self-defense if the danger to the defendant were such that the defendant had reasonable grounds to apprehend a design on the part of the victim to do him some serious bodily harm, and in addition to this, he must have reasonable grounds to apprehend that there is immediate danger of such design being accomplished. It is for you, the jury, to determine the reasonableness of the grounds upon which the defendant acts.
¶22. Having received the arguments by opposing attorneys, we believe that adequate and sufficient jury instructions were provided. In Taylor v. State, 597 So.2d 192, 195 (Miss.1992), the Mississippi Supreme Court stated that the trial court’s instructions must be taken together and need not cover every point of importance as long as the point is fairly presented everywhere:
Our well settled rule is that on appeal we consider complaints of error in jury instructions by reading the instructions as a whole. All instructions “are to be read together and if the jury is fully and fairly instructed by other instructions the refusal of any similar instruction does not constitute reversal error.” Laney v. State, 486 So.2d 1242, 1246 (Miss.1986).
¶ 23. We find that Johnson’s argument is without merit, unsupported by the law, and thus fails to warrant reversal on this issue. We agree that the proffered instructions, when read together, adequately guide the jury concerning the law as stated in Mississippi.
III. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO ALLOW APPELLANT TO SUBMIT INTO EVIDENCE THE PRIOR CONVICTIONS OF THE VICTIM FOR THE PURPOSE OF ESTABLISHING THE DEFENSE OF SELF-DEFENSE.
¶ 24. Johnson insists that his conviction be reversed because he was “prevented from presenting to the jury his entire defense.” He cites as error the fact that he was precluded from submitting to the jury evidence of Donshekie Barret’s felony convictions (house burglary, burglary of an automobile, and grand larceny). This preclusion, he claims, violated Murphy v. State, 566 So.2d 1201, 1206 (Miss.1990).
¶ 25. We are mindful that the supreme court has stated that a defendant is entitled to have an instruction which states his theory of the case. Id. We cannot state that Johnson has been deprived of this right. Jury instruction D-6, a self defense instruction, was granted, as well as two other instructions on self defense. Thus, Johnson would be incorrect in stating that he was prevented from incorporating his theory of defense into this case in a specific jury instruction.
¶ 26. It should be noted that while the jury was not educated on Barret’s prior convictions, the jury in this case was not without evidence regarding the character and reputation of the victim. Johnson, over prosecution’s objection, referred to the fact that the victim had just been released from prison more than once. What Johnson attempted to do in the trial court was employ prior criminal offenses committed by the victim as an *1210 attack upon his credibility without ever directing our attention on this appeal about how these convictions are relevant to Bar-ret’s credibility.
¶ 27. Having stated such, we find this citation of error to be without merit. The defendant was allowed to present his theory of the case under Murphy.
IV. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO ALLOW APPELLANT TO SUBMIT EVIDENCE OF THE VICTIM’S FELONY CONVICr TIONS FOR PURPOSES OF IMPEACHMENT.
¶ 28. As stated above, Johnson attempted to attack the victim’s credibility by means of attacking Barret for crimes he had committed in the past. Johnson states that the probative value of the victim’s prior felony convictions outweigh any prejudicial value.
¶ 29. In order for these past convictions to be introduced before a jury, the burden is upon the moving party to establish {prima facie) that the prior conviction has probative value. McInnis v. State, 527 So.2d 84, 88 (Miss.1988). Then if the probative value outweighs the prejudice the evidence might generate, the circuit court is required to consider and balance the Peterson factors. Peterson v. State, 518 So.2d 632 (Miss.1987). These factors are:
(1) The impeachment value of the prior crime.
(2) The point in time of the conviction and the witness’s subsequent history.
(3) The similarity between the past crime and the charged crime.
(4) The importance of the defendant’s testimony.
(5) The centrality of the credibility issue. Id. at 636.
¶ 30. The State submits that Johnson was not entitled to use these previous convictions of the victim in order to impeach. The State argues that Barret’s crimes were not admissible under M.R.E. 609(a)(2). M.R.E. 609(a)(2) allows introduction into evidence of crimes involving dishonesty or a false statement. The previous crimes Barret has been sentenced for are house burglary, burglary of an automobile, and grand larceny. The comments explain that “the phrase ‘dishonesty or false statement’ in 609(a)(2) means crimes such as perjury or subornation of perjury, false statement, fraud, embezzlement, false pretense, or any other offense in the nature of crimen falsi_” Comment, M.R.E. 609.
¶ 31. In this case, the Peterson balancing test never analytically enters the picture. The circuit court must first determine the probative value of the prior convictions on the testimony of the witness, before the circuit court is required to pursue balancing the itemized Peterson factors above. The circuit judge, commenting on this issue, stated that “[t]he Court has ruled that even though there may be a split of authority on whether the crimes of theft such as grand larceny, and the burglary of a house, and burglary of an automobile are categorized as crimes which would fall under 609A2, this Court has taken a doctrine of majority view that they are not.” See Blackman v. State, 659 So.2d 583, 585 (Miss.1995) (citing Hopkins v. State, 639 So.2d 1247, 1249-50 (Miss.1993)) (“[wjhile there is a split of authority on the question whether theft crimes such as larceny and shoplifting should be categorized as crimen falsi, historically they have not been and this Court has adopted the majority view that they are not.”)
¶32. Turning to the record, we find that Barret did not testify or imply by his testimony that he had never been in any prior difficulties with the authorities. His testimony focused upon the shooting of January 15, 1996. Left with this information and the fact that Johnson has failed to apply the legal formula postulated in Mclnnis, we agree with the State that the viability of this citation of error is meritless.
V. WHETHER THE APPELLANT WAS DENIED A FAIR TRIAL DUE TO THE CUMULATIVE ERRORS EFFECT MADE AT TRIAL.
¶ 33. Finally, Johnson submits that numerous errors were made by the trial court and that a prejudicial effect resulted, ultimately denying Johnson a fair trial. Because of this alleged cumulation of errors, Johnson prays for reversal of his conviction.
*1211-1215 ¶ 34. The Mississippi Supreme Court has noted that although an individual error may not necessarily, by itself, provide grounds for reversal, errors as a whole may result in an accused being denied a fair trial. Griffin v. State, 557 So.2d 542 (Miss.1990). Because, we have found no errors on this appeal, we can not state that the cumulation of errors has prejudiced the defendant.
CONCLUSION
¶ 35. Unfortunately, the ability to command one’s faculties while being tested by others is sometimes lost or forgotten when trouble arises. In this instant case, Johnson and Barret have both claimed some amount of discord concerning the other. Apparently, this friction peaked, leaving one man injured, and another defending this action. The jury spoke to this matter when it returned a verdict of guilty as charged.
¶ 36. While we are cognizant of the intuitive nature of man — that is to defend himself against harm — we are mindful that in a court of law, one’s defense of self defense might be called into question, as was done in this ease. In review of the situation, the defendant failed to adequately provide the jury with sufficient evidence supporting his right to defend himself. The State produced evidence which indicted Johnson, then fostered his conviction, for the crime of aggravated assault. Having stated such, we affirm this conviction.
¶ 37. THE JUDGMENT OF THE CIRCUIT COURT OF WASHINGTON COUNTY OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH FIVE YEARS SUSPENDED IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO WASHINGTON COUNTY.
BRIDGES, C.J., McMILLIN and THOMAS, P.JJ., COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, and SOUTHWICK, JJ., concur.